## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

**Andrew Ricard**
**Craig Melville**

**On behalf of themselves and**
**all others similarly situated**

      **Plaintiffs**

      **v.**                            **Case No.**  15-cv-299

**KBK Services Inc.**

      **Defendant.**

## COMPLAINT

Plaintiffs, by their attorneys, for their Complaint against Defendants state as follows:

1.      This is a collective action under the Fair Labor Standards Act, and an individual and class action under Wisconsin law by Plaintiffs, former employees of Defendant KBK Services Inc. ("KBK"), to seek redress for KBK's failure to pay travel pay when they travelled away from their home communities, as required by the FLSA and Wisconsin law.  The claims arise from the Defendants' unlawful policy of never paying the plaintiffs for their travel time to and from the jobsite, when they were expected by KBK to stay near the jobsite overnight. Plaintiff Ricard also brings a claim under Wisconsin prevailing wage laws against KBK, because he did not receive the full amount of prevailing wages required by law, once he used some of those prevailing wages to pay for motel rooms that were primarily for KBK's benefit.

## JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq.

3.      This Court has supplemental jurisdiction over the Plaintiff's claims brought under Wisconsin law pursuant to 28 U.S.C. §1367 because they are based upon the same nucleus of operative facts, and therefore form the same case or controversy as their FLSA claims.

4.      This Court has personal jurisdiction over the Defendant because it resides in Ashland County, Wisconsin within this district.  Upon information and belief, virtually all, if not all of travel at issue in this complaint occurred in this district.

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) & (c) because a substantial part of the events giving rise to the claims described herein occurred in this district and Defendant may be found within this district.

## THE PARTIES

6.      Plaintiffs are adult residents of the State of Wisconsin who were employed by KBK during the time period on or after May 19, 2012.  Upon information and belief, all plaintiffs reside within the Western District of Wisconsin.  A copy of the FLSA and Wisconsin prevailing wage consents signed by Plaintiff Ricard is attached to this complaint.  A copy of the FLSA consent signed by Plaintiff Melville will be filed with the Court as soon as possible.

7.      Defendant KBK is a Wisconsin corporation with a principal place of business located at 1120 Lake Shore Drive in Ashland, Wisconsin.   KBK performs sheetmetal, steamfitting, and plumbing work on construction projects throughout Northwestern Wisconsin; which are often several hours away from both its headquarters and the homes of its employees.

2

At all relevant times KBK has employed 20 or more employees, whom it would use to perform sheetmetal, steamfitter, and plumbing work on its jobsites.

8.      KBK is an employer within the meaning of Wis. Stat. §109.03(1).  KBK is also an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §203, by, for example, purchasing equipment, materials, and other supplies that were directly or indirectly produced outside Wisconsin, and entering into contracts directly or indirectly with non-Wisconsin customers.   At all relevant times, KBK has had annual gross volume of business at or above $500,000.

<b>FACTS</b>

9.      KBK, as an employer that performs work on construction jobsites throughout Northwestern Wisconsin, frequently performs work at jobsites that are several hours or further from the employees' homes.  It would also, however, assign its employees to work at projects that are an hour or less from their homes.

10.      KBK may work on a single project on a single jobsite for many consecutive months.  Employees are normally assigned to work on one project per week, but may also be required to work on multiple projects during the week, if ordered to do so by KBK.

11.      When KBK assigns an employee to work on a single project during a workweek, the employee normally works four consecutive days on the project.   If the jobsite is several hours or further from the employee's home, KBK expects the employee to stay at, and the Plaintiffs normally would stay at a motel during the three nights in between workdays on the project.  KBK may also offer its employees accommodations at its own building(s), if its buildings are near the jobsite.

3

12.     When the employees do stay at a motel during nights in between workdays on the project, KBK pays for the motel room of the project foreman, but not for the motel rooms of its other employees.  KBK expects its employees to claim the expense of the motel rooms as an unreimbursed business expense on their tax returns, for both projects that are, and are not covered by Wisconsin's prevailing wage laws.

13.     On the morning of the first day of the week that KBK employees are expected to work on a project, the Plaintiffs would drive from their homes to the jobsite.  Plaintiffs would commence work as soon as they arrive at the jobsite.

14.     Because the Plaintiffs would often spent several hours or longer to drive from their homes to the jobsite, the amount of drive time is impossible to determine with precision ahead of time, and the Plaintiffs often have far longer drives to the jobsite during the first day of the workweek, than during the remaining days of the workweek, Plaintiffs often started work at a later time during the first day of the workweek, than they would during the remaining days of the workweek while working on the same project.

15.     Despite the late start on the first day of the workweek, the Plaintiffs would normally work the same number of hours on the jobsite on the first day of the workweek, as they would work on the second and third days of the workweek.

16.     On the final workday of the workweek, Plaintiffs may work fewer hours, than the number of hours that they worked earlier during the workweek. Plaintiffs would start the drive home, as soon as they finish working on the final day of the workweek.

17.     The plaintiffs therefore may still be driving on the first day of working on a project, during hours when they were working on the jobsite during the remainder of the

4

workweek.  Similarly, the Plaintiffs may be driving home on the final day of working on a project, during hours when they were still working on the jobsite earlier in the workweek.

18.     Upon information and belief, KBK failed to keep track of the hours when the Plaintiffs commenced and completed work on a day to day basis, even though it was required to do so by DWD §272.11(d).

19.     When the Plaintiffs chose to travel home at night, even though they were expected by KBK to stay at a motel near the jobsite, they were never paid for their travel time regardless of the length of the drives.

20.     Both named plaintiffs normally drove, rather than rode to the jobsites where they performed work for KBK, during the time period on or after May 19, 2012.

21.     When the Plaintiffs were required by KBK to work at more than one jobsite during a single week, they would drive between the jobsites.

22.     Upon information and belief, when the Plaintiffs performed work at both jobsites on the same day, their drive time between the jobsites is counted as work time on one of the two jobsites; and is paid by KBK at the rate of pay for work on that jobsite.

23.     However, when the Plaintiffs drove between jobsites, but did not perform any work after arriving at the second jobsite, the Plaintiffs' drive time between the jobsites is not counted by KBK as hours worked, regardless of the length of the drive.

**COLLECTIVE ACTION ALLEGATIONS**

24.     Named Plaintiffs bring their First Claim for Relief, pursuant to the Fair Labor Standards Act, on their own behalf and on behalf of all other similarly situated Plaintiffs who lost overtime pay that they are entitled to under the FLSA, as a result of KBK's uniform policy

5

of never counting hours spent either driving between the home and the jobsite, or between jobsites when no work was performed after arrival at the second jobsite, as hours worked.

25.     The First Claim for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b), for prospective members of the FLSA Class that are similarly situated to the Named Plaintiffs and have claims that are similar to their first claim for relief.

26.     Following the filing of this Second Amended Complaint, members of the FLSA Class may sign Consent to Sue forms, and agree to "opt in" as plaintiffs to this litigation.

27.     The claims of the Named Plaintiffs are representative of the claims of members of the FLSA Class in that such employees were hourly employees, worked for KBK, and have been deprived of overtime pay by KBK.

28.     The names and addresses of the FLSA Class are available from Defendants, and notice should be provided to the FLSA Class via first class mail to their last known address as soon as possible.

## CLASS ALLEGATIONS

29.     Named Plaintiffs seek to represent a class of all employees of the Defendant who fall within the following class description, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All employees of the Defendant who, on or after May 19, 2013, was not paid for their hours spent traveling away from their home communities; and/or did not have their hours spent traveling away from their home communities counted as hours worked, for the purpose of calculating their entitlement to overtime pay.

30.     The persons in the class identified above are so numerous that joinder of all members is impracticable.  Upon information and belief, and taking into account the rate of

turnover of KBK employees, there are at least 30 members in the proposed class.  Class members

who are former employees of KBK are widely scattered, thus making joinder even more

impractical.

31.     There are questions of law and fact common to the Wisconsin Unpaid Wage Class

(Rule 23 Class) that predominate over any questions solely affecting individual members of the

class, including, but not limited to:

(a).     Whether all of the time spent by the Plaintiffs, while traveling between home and a jobsite at which they were expected by KBK to stay overnight during the workweek, constitute compensable travel time away from their home communities under Wisconsin law;

(b).     Whether all of the time spent by the Plaintiffs while traveling between jobsites constitute compensable travel time away from their home communities under Wisconsin law, when they were expected by KBK to stay overnight at the second jobsite.

(c).     Whether Wisconsin law requires KBK to pay to the Plaintiffs additional hourly compensation, for each and every one of their compensable travel time hours.

(d).     The rate of pay for the Plaintiffs for their additional compensable travel time hours.

(e).     The appropriate method to calculate the amount of overtime pay owed by KBK to the Plaintiffs, once their compensable travel time hours are taken into account.

32.     Named Plaintiffs' claims are typical of those of the Wisconsin Unpaid Wage

Class.  Named Plaintiff, like other Wisconsin Unpaid Wage Class members, was subjected to

Defendants' uniform policies of never paying the plaintiffs for their travel time between home

and the jobsite, and between jobsites when they did not perform work at the second jobsite,

regardless of how long the drives were, and regardless of KBK's expectation that its employees

would have overnight stays away from home in between days when they worked on the jobsites.

33.     Named Plaintiffs will fairly and adequately protect the interests of the Wisconsin Unpaid Wage Class and has retained counsel experienced in complex wage and hour litigation.

34.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Defendant's common and uniform policies and practices denied the Wisconsin Unpaid Wage Class the wages for work performed to which they are entitled. The damages suffered by the individual Wisconsin Unpaid Wage Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's pay practices.

35.     Class certification of the First Claim for Relief is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law and fact common to the Wisconsin Unpaid Wage Class predominate over any questions affecting only individual members of the Wisconsin Unpaid Wage Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

36.     Named Plaintiff intends to send notice to all members of the Wisconsin Unpaid Wage Class to the extent permitted or required by Rule 23.

**Count I.        Overtime Pay Claim Under the Fair Labor Standards Act.**

37.     Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 36 of the Complaint.

38.     Pursuant to 29 C.F.R. §785.39:

Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal

8

working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. As an enforcement policy the Divisions will not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile.

39.    The United States Department of Labor, which promulgated 29 C.F.R. §785.39, has interpreted the provision to mean that when the driving that occurs on a trip that keeps employees way from home overnight is outside regular working hours, the driving employee must be paid for all of his driving time, while the riding employee need not be paid for his riding time.  See 1996 DOLWH Lexis 15 q. 5.   Given the possible ambiguity of 29 C.F.R. §785.39, the interpretation by the DOL is entitled to deference pursuant to *Auer v. Robbin*s, 519 U.S. 452, 461-462 (1997).

40.    Additionally, the DOL has long held that pursuant to 29 C.F.R. §785.39:

When an employee is required to travel by common carrier away from his usual place of business and remain overnight, all time spent in travel on any of the seven days of the workweek which correspond to his normal working hours must be counted as working time whether or not it is performed on a usual working day.

See WHM 93:313 (7/10/1962).  The final sentence of 29 C.F.R. §785.39 therefore cannot be read to exclude from hours worked time spent traveling as a passenger on a trip away from the home community, where the travel occurred during regular working hours on a non-working day.  The only other plausible explanation of the last sentence of §785.39 is that riding time as a *passenger* on a trip away from the home community, where the travel occurred outside regular working hours, is not compensable as an enforcement policy of the DOL.  The last sentence of §785.39 would have meaning, and is not superfluous, only if travel time while driving on a work trip

9

away from the home community is compensable, regardless of whether the travel occurred during regular working hours.

41.     Alternatively, when the Plaintiffs stayed at or near a jobsite during the workweek, the Plaintiffs' driving and riding times on the first day that they worked on a project occurred during regular working hours, to the extent that they were working on the jobsite during corresponding hours later in the workweek.

42.     When the Plaintiffs stayed at or near a jobsite during the workweek, their driving and riding times on the final day that they worked on a project occurred during regular working hours, to the extent that they were working on the jobsite during corresponding hours earlier in the workweek.

43.     The Plaintiffs' driving and riding times between jobsites occurred during regular working hours, to the extent that they stayed at or near the second jobsite overnight, and were working on the jobsite during corresponding hours during other days of the workweek.

44.     When the Plaintiffs did choose to travel home each night, and their commute was substantially longer than the commute of an hour or less that they would normally have when they worked within their home communities, their excess travel time constitute an indispensable part of their principal activity, and therefore must be counted as hours worked.

45.     Once all the plaintiffs' travel time to and from their home communities are counted as hours worked under the FLSA, each Plaintiff had workweeks during which they worked over 40 hours, but did not receive all overtime pay required by the FLSA.

46.     Since KBK did not have any, let alone reasonable grounds for believing that the plaintiffs' travel time to and from their home communities need not be counted as work time

10

under the FLSA, the plaintiffs are entitled to 100% liquidated damages for all overtime pay that KBK owed to them.  The Plaintiffs are also entitled to application of the three year statute of limitations for KBK's willful violations of the FLSA.

47.     The plaintiffs are additionally entitled to their reasonable attorneys fees and costs of bringing their FLSA claims against KBK.

**Count II.        Claim for Straight Time and Overtime Pay Under Wisconsin Law.**

48.     Named Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1-47 of the Complaint.

49.     Pursuant to DWD §272.12(g)(6), all of the plaintiffs' travel time away from their home community for business purposes that occur for the benefit of the employer must count as hours worked.  The regulation post-dates, and copies the language of §272.12(g)(6), but omits any requirement that the travel occur during regular working hours.

50.     Since the Plaintiffs' travel to KBK and from KBK jobsites was for the purpose of performing work for KBK, all such travel was for business purposes, and for KBK's benefit.  At a minimum, all of the plaintiffs travel time to and from jobsites constitute hours worked, when the trips involved actual overnight stays away from home.

51.     Since there is no explicit requirement in §272.12(g)(6) that the employees have an actual overnight stay away from home, the plaintiffs' travel time to and from jobsites constitute hours worked when they were expected by KBK to have an overnight stay away from home, even though they in fact did not have an overnight stay away from home.

52.     Since Wis. Stat. §109.03(1) and (5) requires the employer to pay to the employees the full amount of promised wages for each and every one of their hours worked, KBK cannot

11

borrow from wages paid to its employees for their other hours worked, and count those wages as compensation for the plaintiffs' travel time away from their home communities.  KBK therefore owes additional hourly compensation to the plaintiffs, for each and every hour of their travel time away from their home communities.

53.     Plaintiffs should be paid at their regular rate for each and every one of their travel hours away from their home communities, since they are paid at their regular rate for their travel between jobsites, when they performed work on the second jobsite on the same day as the travel.

54.     Pursuant to DWD §274.03, all Plaintiffs are entitled to overtime pay at 1.5 times their regular rate of pay, for each and every one of their hours worked over 40 per week.

55.     During the time period on or after May 19, 2013, all of the Plaintiffs had additional hours worked over 40 per week, once their travel time away from their home communities are counted as hours worked.

56.     By failing to count all of the Plaintiffs' travel time away from their home communities as hours worked, KBK has therefore failed to pay to the Plaintiffs the full amount of overtime pay required by Wisconsin law.

57.     Pursuant to Wis. Stat. §109.03(5), the Named Plaintiffs are entitled to maintain a lawsuit against KBK for all wages that they are entitled to receive pursuant to Wis. Stat. §109.03 and DWD Chapter 274.  In such a lawsuit they are also entitled to receive the 50% increased damages authorized by Wis. Stat. §109.11(2)(b), along with their reasonable attorneys fees and costs of prosecuting their claims as authorized by Wis. Stat. §109.03(6).

12

Count III.      Wisconsin Prevailing Wage Claim Against Corporate Defendants.

58.      Plaintiffs reallege, and incorporate by reference, the allegations contained in paragraphs 1- 57 of the Complaint.

59.      Since Plaintiff Ricard often worked at a location that was 1.5 hours or more from his home, and was expected by KBK to work for ten hours per day on the jobsite during most days, he had no practical choice but to stay near the jobsite, during weeks when KBK assigned him to work at a jobsite that was 1.5 hours or more away from his home.

60.      The motel costs that Ricard incurred, while staying near a jobsite that was at least 1.5 hours or more away from his home, therefore were incurred primarily for KBK's benefit.

61.      Wages that Ricard received from KBK, which he then paid to a third party primarily for KBK's benefit cannot count as prevailing wages that was paid free and clear to Ricard.

62.      KBK was therefore required by law to pay to Ricard the full amount of prevailing wages required by law, and reimburse Ricard for the motel costs that he incurred for KBK's benefit.

63.      KBK is therefore required to pay to Ricard twice the amount of prevailing wages owed to him, plus his attorneys fees and costs of bringing the claim.   See Wis. Stat. §66.0903(11)(a)3 and 4.

WHEREFORE, the Plaintiffs respectfully request the Court to enter an order that:

1.      Finds that KBK is liable to the plaintiffs for all unpaid overtime pay, 100% liquidated damages, and attorneys fees and costs arising out of the Plaintiffs' claims under the Fair Labor Standards Act;

2.      Finds that KBK is liable to the plaintiffs for all unpaid straight time and overtime wages that they are owed under Wisconsin law, plus 50% increased damages, and their attorneys fees and costs arising out of the Plaintiffs' claims under Wisconsin law;

3.      Finds that KBK is liable to Plaintiff Ricard for all prevailing wages owed, plus 100% increased damages, and his attorneys fees and costs arising out of the Wisconsin prevailing wage laws;

4.      Grants to the Plaintiffs such other and further relief as the Court deems just and proper.

Dated this 19th day of May, 2015.

/s/Yingtao Ho_____
Yingtao Ho
yh@previant.com
Wis.  Bar #1045418
Attorney for Plaintiffs
The Previant Law Firm S.C.
1555 North RiverCenter Drive, Suite 202
P. O. Box 12993
Milwaukee, WI  53212
Telephone: 414-271-4500
Fax: 414/271-6308