IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREW RICARD and TIM MACKAY,

                Plaintiffs,

v.

KBK SERVICES, INC.,

                Defendant.

OPINION & ORDER

15-cv-299-jdp

---

    Plaintiffs Andrew Ricard and Tim Mackay worked in construction for defendant KBK Services, Inc. They sued KBK for underpayment of wages on behalf of a class, alleging violations of the Fair Labor Standards Act (FLSA) and Wisconsin law.

    Both the FLSA collective action and the class action were previously certified. Dkt. 151. KBK now moves the court to reconsider those certifications. Dkt. 152. On reconsideration, the court will decertify the FLSA collective action because the named plaintiffs are the only two members of that action. The court will also decertify the Rule 23 class because plaintiffs are not adequate representatives of the class. Accordingly, there is no need for plaintiffs to send notice to the Rule 23 class, and their motion for approval of their notice and opt out form will be denied as moot. Dkt. 154.

    Both sides also move for summary judgment on the merits. Dkt. 104 and Dkt. 108. The court will grant KBK's motion for summary judgment and deny plaintiffs'. Plaintiffs' travel to the KBK job sites is ordinary home-to-work travel and not compensable. Because this decision disposes of the case, the parties' joint motion to adjourn the trial date, Dkt. 161, will be denied as moot.

BACKGROUND

Plaintiffs are former employees of KBK, which does sheetmetal, steamfittting, and plumbing work on construction projects in northern Wisconsin. Plaintiffs live in Ashland, where KBK has its main office and shop. KBK also has a shop in Medford. For the most part, KBK employees work at the job sites where KBK provides its services.

Plaintiff Mackey worked for KBK from May 2012 to September 2013. Plaintiff Ricard worked for KBK from May 2013 to September 2013. Between May and September 2013 (the only relevant period, for reasons explained in the analysis section), plaintiffs worked on three projects in three locations: Antigo, Marshfield, and Medford. These locations were at least 115 miles from plaintiffs' homes in Ashland; the furthest was about 160 miles. KBK did not require plaintiffs to stay overnight near the jobsites, nor did it reimburse them for doing so.

KBK employees also occasionally loaded trucks and drove materials and equipment from KBK facilities to jobsites. KBK employees were generally compensated for driving between work locations if they worked at both sites that day. But plaintiffs were not compensated for the time spent driving from home to worksites or back.

The court has jurisdiction over the FLSA claims under 28 U.S.C. § 1331 because those claims raise federal questions, and it has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

ANALYSIS

A. Motion for reconsideration

The court previously certified the Rule 23 class relating to plaintiffs' state law claims. Dkt. 151. It also denied KBK's motion to decertify the stipulated conditional FLSA collective action, in part because the court lacked certain information. *Id.* The parties had not yet informed the court whether any of the 27 potential members had opted in by the March 11, 2016, deadline. It is now clear that none did, thus the only FLSA collective action members are the two named plaintiffs. KBK has moved for reconsideration of both certifications because of both classes' apparently low interest levels in the case. Dkt. 152. The standard for certifying each type of action is largely the same. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). As is the result: the court will decertify both.

1. The FLSA collective action

The court uses a two-step process to certify a collective action under the FLSA. *See Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791, 2013 WL 3287599, at *6 (W.D. Wis. Jan. 25, 2013) (collecting cases). First, plaintiffs must make a modest factual showing that the potential members are similarly situated. The court then conditionally certifies the collective action and authorizes notice to the potential members, who have the choice to opt in to the litigation. Second, after members have received notice and opted in and the parties have engaged in some discovery, the court examines whether the members are in fact similarly situated.

In this case, the parties stipulated to the first step and sent notice to the potential members. Dkt. 67. However, none of the potential members opted in, so the only two members are the named plaintiffs. That makes the similarly-situated analysis unnecessary.

3

There is no group to certify, and the court will therefore grant KBK's request to decertify the collective action. "When a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs." *Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010). Accordingly, the named plaintiffs may proceed on their FLSA claims on their own behalf, but they may not represent a collective action.

### 2. The Rule 23 class action

The court certified the Rule 23 class after finding that it met the requirements of numerosity, commonality, typicality, and adequacy of representation. Dkt. 151. Because plaintiffs seek monetary damages, the class also had to satisfy Rule 23(b)(3), which required that: (1) common questions predominate over individualized questions; and (2) the class action device is superior to another method of adjudication. The certified class comprises the following:

> all KBK employees who, during the time period of May 19, 2013, and thereafter, traveled at least 90 miles from their home to work on a KBK jobsite, and were not paid for all of their travel time between their home and the KBK jobsite or did not have all of their travel time counted as hours worked in determining their eligibility for overtime pay.

Dkt. 151, at 3. KBK asks the court to revisit its certification decision because none of the class members chose to join the collective action. KBK contends that because of the lack of interest, a class action is not superior to other methods of adjudicating the matter.

The level of interest in the FLSA collective action does not determine whether adjudicating related state-law issues as a class action satisfies the predominance or superiority requirements. *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 980 (7th Cir. 2011) ("A simple disparity in numbers [between a class and its corresponding collective action] should not lead a court to the conclusion that a state claim 'substantially predominates' over the FLSA

4

action"). But the lack of interest in the FLSA action may shed light on whether plaintiffs adequately represent the interests of the other class members.

When plaintiffs first presented their certification arguments, they characterized this case as addressing uniform company policies. Dkt. 12 and Dkt. 75. Plaintiffs pleaded broadly in their third amended complaint that plaintiffs and group members collectively faced similar circumstances. Dkt. 39. But, even though the class is quite small, plaintiffs have not presented information about how their specific facts match those of the remaining class members. For example, their briefing details the distances that they travelled and the hours that they worked, but there is no information regarding the circumstances of the other class members. Given that none of the other class members have any interest in pursuing FLSA claims related to those policies, plaintiffs' attempts to change those policies may not be in the best interest of the other class members. And if each class member's experience under the policies varies, then a class action may not be the superior way to adjudicate their claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

And it looks like plaintiffs' experiences may be atypical. Ricard is not similarly situated to the rest of the class because he has state court litigation pending against KBK. That case has nothing to do with the rest of the class (although the court addresses it below because Ricard claims that KBK is retaliating against him). Mackay's claims largely fall outside of the statute of limitations, so he may not be the best class member to represent a class with timely claims. Because neither named plaintiff appears to adequately represent the class, the court will grant KBK's request and decertify the Rule 23 class. Plaintiffs will proceed on their claims only on their own behalf.

### 3. Adequacy of counsel

KBK also moves the court to reconsider its conclusion that class counsel is adequate. KBK alleges that counsel has committed misconduct by making "blatant and continuing misrepresentation[s] to the Court" about Craig Melville, a plaintiff who was dropped from the case last October. Dkt. 152, at 6. Plaintiffs' counsel's statements to the court that Melville's written consent to participate in the FLSA collective action would be filed shortly and counsel's characterization of the complaint were misleading. Melville had never executed a written consent to participate in the FLSA collective action, and the complaint nowhere suggests that Melville was not a plaintiff for *both* causes of action. The court expects counsel to be more conscientious in his duty of candor to the tribunal.

The point is academic because the court has decertified the class for other reasons. The court will not deem plaintiffs' counsel to be inadequate to represent the class.

## B. Summary judgment

Both parties move for summary judgment on the merits, which is appropriate if either party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive summary judgment, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* A party may not simply rely on the allegations in its pleadings to create such a dispute, but must "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [its] favor." *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). Because the parties have filed cross-motions, the court "look[s] to the

burden of proof that each party would bear on an issue of trial; [and] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact" as to that question. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

### 1. Statutes of limitations

The FLSA has a two-year statute of limitations. 29 U.S.C. § 255(a). That deadline may be extended to three years from accrual for willful violations. *Id.* But plaintiffs failed to even *allege* willfulness, let alone support it with admissible evidence. The only relevant allegation in the third amended complaint states that:

> Since KBK did not have any, let alone reasonable grounds for its numerous violations of the FLSA, the plaintiffs are entitled to 100% liquidated damages for all overtime pay that KBK owed to them. The Plaintiffs are also entitled to application of the three year statute of limitations for KBK's willful violations of the FLSA.

Dkt. 39, ¶ 60. At summary judgment, instead of developing this point with evidence, plaintiffs contend that the court should assume willfulness until a later point in the case. Dkt. 147, at 3. The court will not do so. A lone conclusory statement is not enough to demonstrate that KBK knew that it was violating the law, or that it recklessly disregarded the risk that it was. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) ("Summary judgment is the 'put up or shut up' moment in a lawsuit."). Because plaintiffs have failed to adduce any evidence of willfulness on KBK's part, the two-year statute of limitations applies.

Similarly, Wisconsin's statute of limitations for compensation actions is also two years from accrual. Wis. Stat. § 893.44(1); *Erdman v. Jovoco, Inc.*, 181 Wis. 2d 736, 512 N.W.2d 487, 496-97 (1994) (describing how the statute applies in cases about a worker's labor). Accordingly, the court will not consider any FLSA or Wisconsin compensation claims for

events that took place more than two years before plaintiffs asserted their claims in this action.

Plaintiffs contend that KBK underpaid them for time spent travelling to and from worksites, in violation of both the FLSA and Wisconsin law. Mackay specifically contends that he travelled away from his home community "for most of 2012" and in April of 2013. Those time periods are outside of the statute of limitations, and the court will not consider them.

Mackay also drove a company truck to a jobsite during one week in July 2013, Dkt. 136, at 10, which might trigger 29 C.F.R. § 785.38 (relating to travel that is "all in the day's work"). However, Mackay did not join this case until August 24, 2015, Dkt. 11, and did not assert that claim until September 28, 2015, Dkt. 17-1, so those claims are also outside the statute of limitations.

Ricard's statute of limitations period begins May 19, 2013; Mackay's begins September 28, 2013.

## 2. Travel away from home community

The main issue in this case is whether plaintiffs are entitled to compensation for their travel time to KBK job sites. The general rule is that normal home-to-work commuting is not compensable work time. According to the federal regulations implementing the FLSA:

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. *This is true whether he works at a fixed location or at different job sites.* Normal travel from home to work is not worktime.

29 C.F.R. § 785.35 (emphasis added). Wisconsin law matches federal regulations. Under Wisconsin law:

8

> An employee who travels from home before their regular workday and returns to their home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. *This is true whether they work at a fixed location or at different job sites.* Normal travel from home to work is not work time.

Wis. Admin. Code § DWD 272.12(2)(g)2 (emphasis added).

KBK contends that the general rule concerning home-to-work travel applies. Based on the plain language of the text of the regulations, plaintiffs were simply travelling from home to the various job sites at which KBK provided its services, just as contemplated by the rule.

The general rule might not apply if the travel to the workplace were not a normal incident of plaintiffs' employment. What constitutes normal travel is "a subjective standard, defined by what is usual within the confines of a particular employment relationship." *Kavanagh v. Grand Union Co.*, 192 F.3d 269, 272 (2d Cir. 1999); *accord Imada v. City of Hercules*, No. 95-cv-4364, 1997 WL 33566, at *5 (N.D. Cal. Jan. 17, 1997), *aff'd sub nom.*, *Imada v. City of Hercules*, 138 F.3d 1294 (9th Cir. 1998) ("When determining what constitutes normal travel in a particular case, courts consider whether an employee is free to relocate their residence and/or whether the employee entered into the employment with notice of the need to periodically or regularly travel to alternate worksites."). But the record here shows that travel to remote job sites was indeed a normal incident of working for KBK, and for construction companies generally. Some construction companies agree to pay for lengthy travel as part of a contract with its workers or their unions. But there is no genuine dispute that sometimes lengthy travel to job sites is a normal part of working in the construction industry.

Plaintiffs' main argument is that their travel was not normal home-to-work commuting, but rather "travel away from the home community" governed by 29 C.F.R. § 785.39. That section provides:

> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. As an enforcement policy the Divisions will not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile.

29 C.F.R. § 785.39. The section is not a model of clarity, but the essential idea is clear enough: when the employee is required to travel away from home to a place that requires an overnight stay, and that travel is made during work hours, then it is compensable time. This interpretation is consistent with the well-reasoned district court decision in *Bassett v. Tennessee Valley Authority*, No. 09-cv-39, 2013 WL 2902821 (W.D. Ky. June 13, 2013) (collecting cases). Under this interpretation, § 785.39 does not apply to plaintiffs because their travel did not actually require an overnight stay, and their travel times did not cut across their work hours.

Plaintiffs rely heavily on the last sentence of § 785.39, which they contend requires an employer to pay for travel after work hours whenever the employee is driving, but not if the employee is riding as a passenger. Plaintiffs also contend that this interpretation is supported by a 1996 Department of Labor Opinion Letter. 1996 DOLWH Lexis 2015. But that opinion letter is not quite on point; the portion cited by plaintiffs deals with a situation in

10

which an employee was actually required to drive the company van carrying other employees to remote work sites. Plaintiffs have cited no authority that compels their interpretation of the FLSA. Under the weight of better-reasoned authority, including all those reviewed in *Basset*, plaintiffs were engaged in ordinary non-compensable home-to-work travel.

Plaintiffs also argue that Wisconsin law requires KBK to pay plaintiffs' travel time, relying on Wis. Admin. Code § DWD 272.12(2)(g)6. This administrative code section, which is substantially parallel to the federal § 785.39, provides:

> Travel time away from the home community for business purposes that occurs for the benefit of the employer is considered hours worked.

Wis. Admin. Code § DWD 272.12(2)(g)6. Plaintiffs urge the court to interpret the Wisconsin regulation to require that KBK pay plaintiffs' travel whenever the worksite is more than 90 miles from their homes. The court is not persuaded.

This code subsection is part of the Wisconsin Administrative Code that defines hours worked. As under federal law, Wisconsin follows the general rule that normal home-to-work commuting is not compensable. Plaintiffs have not shown how their proposed 90-mile rule is required by, or even consistent with, Wisconsin's wage and hours framework. They cite no case or other authority that suggests that Wisconsin requires payment for ordinary travel to remote worksites, or that Wisconsin regulations of hours worked differs meaningfully from the federal regulations.[1]

---

[1] "Because the Wisconsin administrative regulations at issue here are substantially similar to federal regulations, federal cases may assist in our analysis." *United Food & Commercial Workers Union, Local 1473 v. Hormel Foods Corp.*, 2016 WI 13, ¶ 65, 367 Wis. 2d 131, 876 N.W.2d 99.

Plaintiffs' novel proposed interpretation of Wisconsin and federal regulations would produce perverse incentives for workers who travel to remote job sites. KBK did not require overnight travel; plaintiffs chose to spend the night near jobsites for their own safety and comfort. Dkt. 39, ¶ 53; Dkt. 110; Dkt. 112. But if their travel time were compensable, plaintiffs would then be strongly motived to return home each night. *At their option*, plaintiffs could add up to six hours to their compensable time each day, merely by driving home rather than staying near the job site. And if they already had a full work week on the job, the additional travel time would have to be paid at overtime rates. Plaintiffs' proposed interpretation of the travel rules would strongly encourage workers to undertake a great deal of inefficient and potentially unsafe travel. Plaintiffs proposed interpretation of § DWD 272.12(2)(g)6 is unprecedented and unsupportable.

Based on the undisputed facts and the court's interpretation of the applicable regulations, plaintiffs' travel to and from their jobsites was ordinary home-to-work travel, and not compensable "travel away from their home community" under either the federal or state regulations. Plaintiffs' hours spent driving were not properly considered compensable work hours, and those hours were properly excluded from calculating overtime pay.

### 3. Prevailing wage jobs

Under Wisconsin's Prevailing Wage Act, Wis. Stat. § 66.0903, employees who work on public projects or publicly funded projects must be paid the prevailing wage. Plaintiffs contend that KBK failed to pay them the prevailing wage for the public projects on which they worked. Plaintiffs also contend that by failing to apply the prevailing wage, KBK miscalculated their overtime pay.

Under the FLSA, if an employee works longer than 40 hours in a workweek, his excess hours must be compensated at a rate of at least "one and one-half times the regular rate at which he is employed," unless an exception applies. 29 U.S.C. § 207(a)(1). Plaintiffs contend that they received only 136 percent, instead of 150 percent, of the properly calculated base rate for the prevailing wage projects.

But these claims are not timely. Within the statute of limitations, plaintiffs worked on three projects: Langlade Wellness Center, Prevention Genetics, and Memorial Health Center. Dkt. 130, at 2. None of these worksites qualified as "prevailing wage jobs" because none were public or publicly funded. Dkt. 130, at 2. Accordingly, plaintiffs cannot assert claims under the Prevailing Wage Act. Nor may they assert overtime claims based on prevailing wage rates for those projects. Therefore, KBK is entitled to judgment as a matter of law on this claim.

4. **FLSA retaliation**

The FLSA prohibits adverse employment actions against an employee who has filed an FLSA complaint. 29 U.S.C. § 215(a)(3). Plaintiffs allege that KBK retaliated against Ricard for bringing this FLSA action by filing its own action for breach of contract in state court. Ricard had entered an apprenticeship agreement with KBK, which provided Ricard with subsidized on-the-job training in exchange for his commitment complete the apprenticeship program, which required 8,000 hours of work for KBK. If Ricard were to voluntarily resign or were terminated for misconduct before completing the apprenticeship program, he would be required to repay the subsidy. Plaintiffs filed this action on May 19, 2015. Then, on September 15, 2015, KBK filed a separate lawsuit in state court against Ricard for breaching his apprenticeship agreement.

KBK has as much of a right to sue in court for relief as plaintiffs have. *See Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."). And a "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (citations omitted). But if KBK's lawsuit lacks a "reasonable basis" in law or fact, then it is not protected First Amendment activity, and may instead be considered retaliatory. *Geske & Sons, Inc. v. N.L.R.B.*, 103 F.3d 1366, 1372 (7th Cir. 1997) (If the state-law suit is "plainly foreclosed as a matter of law or is otherwise frivolous," then the suit is baseless and may have been retaliatory. (quoting *Bill Johnson's Rests.*, 461 U.S. at 747)).

Ricard does not dispute that he had an agreement with KBK to reimburse it for his training costs. Dkt. 130, ¶ 30. And he acknowledges that if he did voluntarily resign, he would be obligated to repay the apprenticeship subsidy. *Id.* ¶ 35. Plaintiffs contend that KBK's suit is nevertheless frivolous, because Ricard quit only after a long layoff, which does not constitute a voluntary resignation that triggers the repayment obligation. This is a viable dispute on the merits of the case, but it does not show that KBK's suit is frivolous because long layoffs are commonplace in the construction industry. Indeed, Ricard had endured such layoffs before. This court need not (and could not on this record) resolve the merits of that case, but it is clear that it is not "plainly foreclosed as a matter of law or . . . otherwise frivolous." *Bill Johnson's Rests.*, 461 U.S. at 747.

So where does that leave plaintiffs' retaliation claim? KBK has not shown beyond dispute that the suit against Ricard is *not* retaliatory, but that is not KBK's burden. KBK is

14

entitled to summary judgment if it can show that plaintiffs have failed to adduce evidence to support a required element of their claim, specifically evidence of KBK's retaliatory motive. Because the court has determined the KBK's suit is not frivolous, all plaintiffs have is the purportedly suspicious timing. But timing alone is not enough. *Stone*, 281 F.3d at 644. Because plaintiffs have failed to adduce evidence sufficient to establish KBK's retaliatory motive, KBK is entitled to judgment on the retaliation claim.

## C. Additional motions

KBK had moved for a protective order preventing plaintiffs from inspecting KBK's Ashland shop. Dkt. 47. Plaintiffs opposed. Dkt. 51. The motion for protective order was apparently never decided, and whether any inspection occurred is not clear from the record. Plaintiffs offered scant justification for the inspection. In any case, plaintiffs did not invoke the lack of inspection as grounds for denying KBK's motion for summary judgment, so KBK's motion for protective order is denied as moot.

Plaintiffs move the court for approval of notice to the Rule 23 class. Dkt. 154. Because the class is decertified, there is no need to notify the class. This motion will be denied as moot.

The parties' motion to adjourn the trial date and revise the case schedule, Dkt. 161, is also denied as moot because the substantive decisions in this order dispose of the case.

ORDER

IT IS ORDERED that:

1. Defendant KBK Services, Inc.'s motion for reconsideration, Dkt. 152, is GRANTED. The FLSA collective action and the Rule 23 class are decertified.

2. Defendant's motion for summary judgment, Dkt. 104, is GRANTED.

3. Plaintiffs' motion for summary judgment, Dkt. 108, is DENIED.

4. All other pending motions (including defendant's motion for protective order, Dkt. 47; plaintiffs' motion for court approval of class notice and opt out form, Dkt. 154; and the parties' joint motion to adjourn the trial date, Dkt. 161) are DENIED as moot.

5. The clerk is directed to enter judgment for defendant and close this case.

Entered September 7, 2016.

                        BY THE COURT:

                        ____/s/_____
                        JAMES D. PETERSON
                        District Judge